SO ORDERED: December 15, 2011.



_____
**Frank J. Otte**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| G & S LIVESTOCK COMPANY, | ) | CASE NO. 10-81378-FJO-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| WILLIAM J. TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ADVERSARY NO. 11-58007 |
| | ) | |
| PAUL GIBSON, SR., | ) | |
| PAUL GIBSON, JR., and | ) | |
| MELINDA HART, | ) | |
| | ) | |
| Defendants. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**SUPPORTING JUDGMENT IN FAVOR OF PLAINTIFF**

The Court having conducted a trial in this matter on November 2, 2011, now enters its findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 F.R.Civ.P.:

**FINDINGS OF FACT**

1.  G & S Livestock Company ("G & S" or "Debtor") was a wholesale hog dealer that operated in Warren and Greene Counties, Indiana for nearly 30 years, until it ceased doing business in August 2010. Paul E. Gibson, Sr. ("Senior") started the business and his son, Paul E. Gibson, Jr. ("Junior", and together with Senior, the "Gibsons"), was active in the business since the mid-1980's.

2.  Senior incorporated G & S in 1985 as "G & S Livestock Sales, Inc.," an Indiana corporation, but allowed it to dissolve in 1990. (Pltf. Ex. 1) Thereafter, the Gibsons continued to operate the hog business together under the name "G & S Livestock Company."

3.  The G & S business involved the purchase of hogs from suppliers, the sale and transportation of hogs to packers, the collection of invoices sent to the packers, and finally the payment of the hog suppliers and transportation costs.

4.  Brutlag Livestock Company Corporation, Florence Livestock, Inc., Howard Curry Transport, Inc., S & J Villari Livestock, LLC, Tyson Hog Markets, Inc., UPI/Parks, LLC, and Parks of Iowa, LC (collectively, the "Petitioning Creditors") did business with G & S for many years, supplying G & S with hogs and transportation services.

5.  Between mid-July and mid-August, 2010, G & S purchased and received hogs from the Petitioning Creditors at a cost of $1,116,311 and incurred transportation charges of $78,220 to Curry Transport. G & S then sold the hogs to Premier Pork, a packer located in New Jersey, and G & S was paid in full for the hogs by Premier. However, G & S failed to pay the amounts owed to Petitioning Creditors and instead abruptly closed its doors. (Pltf. Ex. 17, No. 10; Junior's Answer. (Doc. 22), ¶¶ 15-18)

6.      On September 2, 2010, the Petitioning Creditors filed an involuntary petition against G & S, asserting that G & S is a partnership. (Pltf. Ex. 2) The summons and involuntary petition were served on Junior by certified mail and personally. Neither G & S nor any other party contested the involuntary petition or any allegations in the petition.

7.      The Court entered an Order for Relief in this case on October 8, 2010, adjudicating G & S to be a Chapter 7 debtor partnership. (Pltf. Ex. 3) No party appealed the Order for Relief.

8.      Junior attended the §341 meeting of creditors on behalf of G & S. On December 1, 2010, Junior signed and filed the G & S schedules and statement of financial affairs on behalf of said "CORPORATION OR PARTNERSHIP." The schedules reflect G & S assets of only $500 in office supplies, a checking account at Bank of Indiana (#33472) with zero balance and a state board of health license with unknown value. The schedules list the Petitioning Creditors on Schedule F as unsecured creditors. The statement of financial affairs signed by Junior on behalf of G & S states that the gross profit of the "Debtor Company" was $1,873,664 in 2009 and $843,946 for the first six months of 2010. (Pltf. Exs. 4 and 5)

9.      The Plaintiff was duly appointed as the Chapter 7 trustee ("Trustee") in this case on October 19, 2010. The Trustee filed this adversary proceeding on February 7, 2011, which seeks the following relief: (I) pursuant to 11 U.S.C. § 723(a), a money judgment against Senior and Junior in a sum not less than $1,194,531.25, based on their status as general partners of G & S, (ii) the avoidance and recovery of certain real estate transfers to Melinda Hart ("Hart"), and (iii) a judgment against Junior for having utilized $600,000 of G & S funds for personal use.

10. The Petitioning Creditors are collectively owed $1,194,531.25 by G & S and have filed the following Proofs of Claim evidencing this debt: 1) Tyson filed Proof of Claim No. 1 for $350,873.60; 2) UPI filed Proof of Claim No. 2 for $242,366.85; 3) Parks filed Proof of Claim No. 3 for $44,790.05; 4) Brutlag Livestock filed Proof of Claim No. 4 for $121,764.40; 5) S & J Livestock filed Proof of Claim No. 5 for $272,704.69; 6) Curry Transport filed Proof of Claim No. 6 for $78,220.00; and 7) Florence Livestock filed Proof of Claim No. 7 for $83,811.66. (Pltf. Exs. 22-28)

11. The Gibsons were both active in the G & S business for 25 years. Senior continued to be involved in the G & S business and continued to work at the G & S offices in Linton, Indiana on a regular basis until the cessation of the G & S business in late August 2010. (Pltf. Ex. 17, Nos. 1 and 2)

12. Senior made or was consulted on all major decisions affecting the G & S business. For example, it was Senior alone who visited Premier in August 2010 in a final effort to salvage the G & S business, and it was Senior who ultimately made the final decision to close the G & S business after the Petitioning Creditors refused to continue supplying hogs on credit.

13. The Petitioning Creditors supplied hogs to G & S based primarily on their long relationship with Senior. Although by 2010 Junior may have had more day to day contact with Petitioning Creditors, all major business decisions of G & S continued to be made by or only in consultation with Senior.

14. None of the Petitioning Creditors, all of which had done business with G & S for decades, were notified that Senior had retired from G & S or had otherwise conveyed sole ownership of G & S to Junior.

4

15. During 2010 and prior to G & S closing its doors, Senior contacted each of the Petitioning Creditors and gave personal assurances that past due invoices would be paid if the creditors continued to supply G & S with hogs and transportation services. In reliance on such assurances, and the relationship of trust developed between the creditors and Senior over decades of doing business, the creditors continued to supply G & S on open account.

16. To the outside world, Senior continued to be a co-owner of the G & S business until it closed its doors. Notwithstanding testimony that Senior desired to exit the business after 2006, no documents exist evidencing a transfer of the G & S assets or business to Junior. Moreover, Senior's actions and statements made in subsequent years evidence that Senior remained deeply involved in the G & S business along with Junior.

17. Certain G & S records indicate that G & S Livestock Company continued business as usual after 2006, with both Senior and Junior remaining active in the business. For example, the G & S operating account #33472 at Bank of Indiana was titled "Paul E. Gibson Sr., DBA G & S Livestock Co.," and both Senior and Junior were authorized signers on the account until it was closed in September 2010. (Pltf. Ex. 6) The bank statements for G& S account #33472, including the final statement dated September 16, 2010, were addressed to Senior at the G & S offices in Linton. (Pltf. Exs. 7-10) The G & S bond (bond no. 6923665) maintained at the P&SA (the federal agency with regulatory authority over livestock dealers) prior to its cancellation in 2010 named Senior "dba G & S Livestock Co" as the principal. (Pltf. Ex. 12) In addition, G & S used the same employer identification number, 35-1421318, from its inception to its cessation of business.

18. The Gibsons were inconsistent and informal in their treatment of G & S as a business entity; and the creditors reasonably relied on the belief that Senior was an active part of

5

the business.  Senior incorporated "G & S Livestock Sales, Inc." as an Indiana corporation in 1985, but allowed it to dissolve in 1990.  (Pltf. Ex. 1)  The G & S bank account and bank statements identified the account owner as "Paul E. Gibson Sr, DBA G & S Livestock Co." (Pltf. Exs. 6-10)  The G & S checks named the payor as "G & S Livestock Co.," whereas the G & S invoices identified the entity as "G & S Livestock Co. – Livestock Dealers."  (Pltf. Exs. 11 and 11A)  A sign at the G & S offices in Linton identified the business as "Gibson and Son, Inc." The Livestock Dealer License (license no. LD-2800AH) issued by the Indiana State Board of Animal Health names the licensee as "G & S LIVESTOCK."  (Pltf. Ex. 13)  Finally, no party challenged the characterization of G & S as a partnership in the Involuntary Petition, and the schedules and statement of financial affairs identify G & S as a "Debtor Company."

19. The tax returns of Senior and Junior for the years 2006-2009 do not evidence a sale or gift of the G & S business to Junior, but reflect that taxable income relating to the G & S business was reported on Junior's return after 2006.  During 2009-2010, Senior made capital contributions or loans to G & S in the sum of $1,094,000 for the purpose of keeping G & S open for business.  (Pltf. Ex. 15, No. 7)

20. As the *G & S* Livestock Company name implies, the Gibsons were associated as co-owners of a business for many years, continuing until G & S closed its doors in August 2010. The conduct of Senior and Junior establishes their intention and agreement to operate the G & S business together in a relationship that can best be characterized as a partnership.

21. In addition, both Senior and Junior, by words and conduct, held themselves out to the public, including Petitioning Creditors, as having authority to make decisions for G &S, and the Petitioning Creditors relied on such representations in good faith by extending credit to G & S as a *de facto* or apparent partnership.

22. In its bankruptcy schedules, G & S lists only $500.00 in total assets. (Pltf. Ex. 4) There is a deficiency of property of the estate to pay in full all claims against G & S.

23. On August 11, 2010, approximately the time that the Petitioning Creditors refused to continue delivering hogs on open account, Senior transferred his residence to his girlfriend, Melinda Hart; on September 16, 2010, two weeks after the involuntary petition was filed, Senior transferred five (5) other parcels of real estate to Hart (collectively, the "Senior Transfers"). In responses to discovery (Pltf. Ex. 15, No. 2), Senior identified the Senior Transfers as follows:

    a. 8882 East Co. Rd. 500 North, Jasonville, IN 47438 (Senior's residence);

    b. 1184 N. 600 E., Attica, IN 47918 (5 acres and a house);
    c. Independence Road, Attica, IN 47918 (rough wooded lot);
    d. Kickapoo Road, Attica, IN 47918 (31 acres);
    e. Independence Road, Attica, IN 47918 (4.54 acres); and
    f. 4645 E. Independence Road, Attica, IN 47918.

24. Hart and Senior admitted that Senior received no consideration in exchange for the Senior Transfers. (Pltf. Exs. 15, No. 2, and 16) At the time of the Senior Transfers, Senior knew, or reasonably should have known, that he was indebted to the creditors of G & S. Senior testified that his only remaining assets are: (1) $10,000 in a bank account, (2) $40,000 in an IRA, and (3) three parcels of real estate with a total assessed value of $67,000. Therefore, Senior was insolvent at the time of the Senior Transfers.

25. Based on the timing of the Senior Transfers in relation to the involuntary petition and cessation of the G & S business, and other circumstantial evidence presented at trial, Senior made the Senior Transfers for less than the value of the real estate transferred and when he was insolvent or became insolvent as a result of the transfer.

26. On October 15, 2010, one week after the Order for Relief was entered against G & S, Junior transferred a 120-acre farm in Warren County, Indiana, to Hart for the sum of $205,000 (the "Junior Transfer"). (Pltf. Exs. 19 and 20) An appraisal prepared for Junior and dated November 9, 2009, valued the 120-acre farm at $343,770. (Pltf. Ex. 21) Junior himself valued the farm at $425,000 on a balance sheet prepared in December 2007. (Defdt. Ex. O)

27. Junior received inadequate consideration in exchange for the Junior Transfer.

28. At the time of the Junior Transfer, Junior knew, or reasonably should have known, that he was indebted to the creditors of G & S. Junior admitted during his testimony that he was insolvent at the time of the Junior Transfer.

29. Based on the timing of the Junior Transfer in relation to the Involuntary Petition and cessation of the G & S business, and other circumstantial evidence presented at trial, Junior made the Junior Transfer for less than the value of the real estate.

30. During 2009-2010, while G & S was having great difficulty paying its debts as they came due, Junior took approximately $500,000-$600,000 from the G & S business and spent the funds on gambling trips to Las Vegas, motorcycle racing, and other personal activities. (Pltf. Exs. 17, No. 9, and 17A, No. 7)

## **CONCLUSIONS OF LAW**

1. The Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334. The parties have stipulated in their pleadings and at trial to the Court's jurisdiction to enter final judgment in this matter.

2. The causes of action set forth herein arise under Title 11 of the U.S. Code or arise in a case under Title 11. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(A), (E), (H) and (O). The resolution of the claims alleged herein will critically affect the value of the Debtor's estate and any distributions to the Debtor's creditors.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This adversary proceeding is brought pursuant to Title 11 of the U.S. Code, the Federal Rules of Bankruptcy Procedure and applicable Indiana law including, without limitation, the following statutory provisions: 11 U.S.C. § 723(a), 11 U.S.C. § 544, 11 U.S.C. § 550 and Ind. Code §§ 32-18-2-15.

5. The Order for Relief is a final judgment on the status of G & S as an eligible Chapter 7 debtor. The parties have stipulated that G & S is an eligible Chapter 7 debtor.

6. G & S is a partnership. Senior and Junior are general partners of G & S. Moreover, Senior and Junior held themselves out to the world as co-owners of G & S Livestock Company, and are estopped to deny that they are partners in the G & S partnership.

7. Alternatively, G & S is an unincorporated association owned by Senior and Junior, who conducted business together ostensibly as an entity known as "G & S Livestock Company," but with knowledge that G & S was not incorporated.

8. Whether G & S is a partnership or unincorporated association, Senior and Junior are jointly and severally liable for all liabilities of G & S to the extent that G & S lacks assets to pay its liabilities.  See 11 U.S.C. § 723(a); Ind. Code § 23-1-21-4.

9. G & S owes $1,194,531.25 to the Petitioning Creditors, as set forth in the proof of claims.

10. There is a deficiency of property in the Debtor's estate to pay in full all allowed claims.  The deficiency is at least $1,194,031.25, representing the amount owed by G & S to the Petitioning Creditors.

11. Senior and Junior are each personally liable, jointly and severally for this deficiency of $1,194,031.25 and the Trustee may seek recovery from them personally.  Any property recovered by the Trustee from Senior or Junior is property of the Debtor's estate.  See 11 U.S.C. § 541(a)(3).

12. The Senior Transfers are voidable under 11 U.S.C. § 544(b) and Ind. Code § 32-18-2-15 because Senior did not receive reasonably equivalent value in exchange for such transfers, and G & S and Senior were insolvent at that time or became insolvent as a result of the transfers.

13. The Junior Transfer is voidable under 11 U.S.C. § 544(b) and Ind. Code § 32-18-2-15 because Junior did not receive reasonably equivalent value in exchange for such transfer, and G & S and Junior were insolvent at that time or became insolvent as a result of the transfers.

14. Hart gave value to Junior in the sum of $205,000 in exchange for the Junior Transfer.

**ENTRY OF FINAL JUDGMENT**

The Court will enter a separate final judgment in favor of the Trustee and against the Defendants on Counts I and II of the Complaint, consistent with these findings of fact and conclusions of law.

###