**SO ORDERED: February 24, 2012.**



_____
**Frank J. Otte**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| G & S LIVESTOCK COMPANY, | ) | CASE NO. 10-81378-FJO-7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| WILLIAM J. TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ADVERSARY NO. 11-58007 |
| | ) | |
| PAUL GIBSON, SR., | ) | |
| PAUL GIBSON, JR., and | ) | |
| MELINDA HART, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter came before the Court upon the filing by the Defendants, Paul Gibson Sr. and Melinda Hart, of the Motion for Leave to File Appeal Pursuant to Rule 8002(c)(2) and the Objection filed thereto by the Trustee William J. Tucker. The Court held a hearing on this matter

on February 8, 2012.

After having reviewed the relevant pleadings and having heard the testimony of the witnesses and the arguments of counsel, the Court now finds that the relief requested in the Motion should be denied for the reasons set forth below.

This Court held a lengthy trial on November 2, 2011 on the Trustee's Complaint against Paul Gibson, Sr., Paul Gibson, Jr. and Melinda Hart (the "Defendants").  When the trial was concluded that day, from the bench, the Court announced its ruling against the Defendants and in favor of the Trustee.  The Court further indicated that it would follow up with additional findings of fact and conclusions of law consistent with and in addition to the Court's ruling from the bench.  This Court entered its findings of fact and conclusions of law and final judgment in favor of the Trustee and against the Defendants on December 15, 2011.

Bankruptcy Rule 8002 sets out the time for filing a notice of appeal.  Rule 8002(a) sets out that a notice of appeal shall be filed withing 14 days of the entry of the judgment order.  Therefore, it is clear that under the Rules, the Defendants had 14 days from the December 15, 2011 entry of the Judgment (until December 29, 2011) to file a notice of appeal.  That time period passed; and instead, on January 12, 2012, the Defendants filed a Motion for Leave Pursuant to Rule 8002(c)(2).  Bankruptcy Rule 8002(c)(2) sets out that a request to extend time for filing a notice of appeal made after the 14 day period has expired but before 21 days after said period has run must only be granted upon a showing of "excusable neglect".  The Defendants allege that their untimely notice of appeal was the result of "excusable neglect"; asserting that their trial counsel did not inform them of the deadline for filing a notice of appeal.

All counsel in this case have appeared in this Court enough times to know that this Court has always liberally applied exceptions as to deadlines when possible. However, there are times

-2-

when the flexibility to apply such exceptions is very limited or even non-existent. The rules governing appeals are in fact one of the limited situations. The requirement of a timely notice of appeal is mandatory and jurisdictional. *Sabo v. Montgomer, 2008 WL 344549* (S.D Ind. 2008)*; Stelpflug v. Fed. Land Bank of St. Paul,* 790 F.2d 47, 49 (7th Cir. 1986). For this Court to extend the time for the Defendants to appeal, the movants must demonstrate sufficient grounds for this Court to find "excusable neglect". Courts have found that in making a determination that excusable neglect exists requires "unique or extraordinary circumstances", and the Defendants must give the Courts something more than "we tried", " no one told us", the judgment will be prejudicial, or the court was wrong. See *Barnes v. Cavazos*, 966 F.2d 1056, 1061 (6th Cir.1992) (discussing Fed.R.App.P. 4(a)(5)); *Baker v. Raulie*, 879 F.2d 1396, 1399 (6th Cir.1989) (Rule 4(a)(5)); Marsh, 873 F.2d at 130. Bankruptcy courts do not normally treat being out of town as a unique or extraordinary circumstance. See *In re Neill*, 158 Bankr. 93, 96 (Bankr.N.D.Ohio 1993) (debtor on vacation); *Elias v. Zeller,* 38 B.R. 739, 741 (Bankr. 9th Cir.1984) (counsel on vacation); *In re Smith*, 38 Bankr. 685, 686 (N.D.Ohio 1982) (counsel unable to contact client); *In re Culmtech, Ltd.*, 89 B.R. 418, 419 (Bankr.M.D.Pa.1988) (counsel absent on business).

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd.*, 113 S.Ct. 1489 (1993), the Supreme Court set forth the standards of excusable neglect. *Pioneer* "clearly directed a relaxation of the strict standards of excusable neglect," *In re Mayville Feed & Grain, Inc.*, No. 92-2036 (6th Cir. June 17, 1993), but the standards have not been abolished altogether. *Pioneer* also did not deal with the appeal rules which are strictly construed, it dealt with a Bankruptcy Rule 9006(b)(1) which gives authority to the bankruptcy court to permit the late filing of a proof of claim. The bankruptcy court in that case had mailed out a "Notice for a Meeting of Creditors" the text of which announced a "bar date," or deadline, for filing proofs of claims. The creditors'

attorney, who was retained after the creditors had received this notice, was unaware of the deadline. The creditors tendered their proofs of claims late, and asked the court to permit a late filing under Bankruptcy Rule 9006(b)(1). The Court, in finding excusable neglect, considered the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. 113 S.Ct. at 1498, citing *Pioneer Investment Services Co. v. Brunswick Associates, Ltd.*, 943 F.2d 673, 677 (6th Cir.1991). Courts will consider if the movant knew about the judgment and knew that there was a deadline as part of the analysis of the reasons for the delay, was the delay within the reasonable control of the requesting parties and whether they acted in good faith. "The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules." Prizevoits v. Indiana Bell Telephone Co., 76 F.3d 132, 133 (7th Cir. 1996); *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 515 (2d Cir.1985).

In the case of *In re HML II, Inc.*, 234 B.R. 67 (BAP 6th Cir. 1999), the bankruptcy court entered an order granting the trustee's abandonment motion, and the debtor filed a notice of appeal five days after the deadline. The debtor also timely filed a motion under Rule 8002(c)(2), contending that the untimely appeal was the result of excusable neglect because the debtor and its counsel had mistakenly relied on Civil Rule 6 rather than Bankruptcy Rule 8002 in computing the deadline. *Id.* at 71. The bankruptcy court and the appellate panel denied the debtor's motion, holding that, even after *Pioneer*, a misreading of a rule or statute does not satisfy the excusable neglect standard under Bankruptcy Rule 8002(c)(2). *Id.* at 72. *See also Prizevoits v. Indiana Bell Telephone Co.*, 76 F.3d 132, 133 (7th Cir. 1996) ("the excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend

-4-

the plain language of the federal rules").

The bankruptcy court in *In re Pyramid Energy, Ltd.*, 165 B.R. 249 (Bankr. S.D. Ill. 1994) ruled against a bank, and the bank filed a notice of appeal one day after the deadline. Although a number of equitable factors existed to consider excusing the late appeal (i.e., one day delay; minimal prejudice; no indication of bad faith), the bankruptcy court denied the Rule 8002 motion because the bank failed to offer any sufficient reason for the delay. *Id.* at 251-52. The court noted that the bank and its counsel had sufficient time to file a notice of appeal, especially given the fact that the court had announced its oral ruling over a month prior to entry of the written order and there was no question that the bank and its counsel actually received the written order. *Id.* at 251. This Court notes that this is a similar fact pattern as in the case presently before it; the Defendants were present in Court over a month prior to the entry of this Court's judgment and the Defendants personally received a copy of the judgment ten days before the time expired.

Judge Anthony J. Metz III of the Southern District of Indiana in 2007 denied a movant's request to file a late appeal. His decision was upheld by the District Court in *Sabo v. Montgomery*, 2008 WL 344549 (S.D. Ind. 2008). In this case, the losing party contended his untimely appeal was due to excusable neglect because his lawyer failed to advise him that the adverse order had been entered. Sabo was present in the court room when the judge made his ruling from the bench; all facts similar facts to the case presently before this Court. Judge Metz denied the movant's Rule 8002(c) requests for an extension of time to file an appeal. The district court affirmed the lower court's order, and in doing so, summarized the standards of "excusable neglect" standard as follows:

In *Pioneer Ins. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the leading case on 'excusable neglect' in bankruptcy law, the Supreme Court stated that 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.' Legal professionals are expected 'to exercise vigilance and caution in the performance of [their] responsibilities.' *Robb*, 122 F.3d at 362-63 (*quoting Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 615 (7th Cir. 1987) (Coffey, J., dissenting)). '[N]ot every instance of neglect to file on time is excusable.' *See United States v. Marbley*, 81 F.3d 51, 52 (7th Cir. 1996); *Robb*, 122 F.3d at 362-63 (stating that district judges should 'keep[ ] in mind the standards expected of all attorneys as well as the importance of preserving the integrity of filing deadlines and court rules.') The Court has also held that it did not matter that the fault was caused by the attorney and not the party, because clients are accountable for the acts and omissions of their attorney. *Matter of Bulic*, 997 F.2d 299, 302 (7th Cir. 1993) (discussing *Pioneer*).

The Defendants both admit they were in the court room when this Court ruled from the bench. They indicated they knew the day of the trial that they intended to appeal the Court's decision. Ms. Hart testified that her counsel the day of the trial told her and Mr. Gibson that it was common practice for clients to retain a different attorney for the appeal and that the deadline for appeal would start to run once the order of judgement was entered. It is undisputed that the Defendants received a copy of judgment in the mail on December 19, 2011. They admit they spoke to Mr. Brames' office the next day, on December 20, 2011, and his office offered to schedule a meeting with them before or after Christmas. Mr. Gibson testified they indicated they would meet after Christmas. There was no other testimony of any other contacts with Mr. Brames or his office so this Court must assume that none took place since that evidence would have been offered at the hearing. It is unclear why these Defendants chose not to meet with Mr. Brames, but that is certainly their choice. It is unclear why the Defendants decided to wait until December 28 or 29, 2011 to make an effort to talk with another attorney. Ms. Hart's testimony was that they talked with an attorney on December 28, 2011. The Court notes that this was still within the time for filing a notice of appeal. The witness changed her recollection of these facts and later testified that she called an attorney's office on December 29, 2012 (the last day to file

-6-

an appeal) and the counsel was out of the office and he did not return until January 3, 2012 on which date they spoke about the appeal.   Clearly, this counsel did not take the case, and the Defendants admit they proceeded to contact approximately four other counsels until they met with Mr. Skillman on January 12, 2012; the date on which he filed the pending motion.  Mr. Gibson admitted they were in "panic mode" because they knew that time was running out of time for the appeal.   Apparently, the Defendants never attempted to determine what the deadline was they were facing for their appeal but they both admit they knew one existed.  It seems inconceivable that the Defendants never simply asked anyone what deadline they were facing, but apparently they did not; again this is their choice on how they chose to handle the situation.

   The Defendants' counsel's argument for purposes of demonstrating grounds for excusable neglect was that the judgment is prejudicial because, the Court speculates, it is a large judgment.  The Court would speculate any party would assert that a judgment being rendered against them is prejudicial. Counsel further argues that he believes the Court was incorrect in its ruling.  It is safe to assume that most, if not all, parties and their counsel believe that the Court was wrong in its ruling when they are on the losing end. Delaying this case further will be prejudicial to the creditors of this estate, causing the Trustee to incur additional litigation expenses, thereby further diminishing the estate and harming the interests of creditors in this case. The Defendants had from November 2, 2011 (when they learned of the judgment and when their counsel indicated different counsel customarily handles the appeal)  until  December 29, 2011, to seek out assistance on guiding them on the legal remedies.   The only excuse offered by the Defendants for not filing a timely  notice of appeal is that, allegedly, their trial counsel "did not inform them of the deadline." This Court finds it implausible that these Defendants were not

-7-

well counseled.  The trial of this case was one of best displays of litigation skills as this Court has seen; but counsels do not pick the facts and the facts of this case were strongly against these Defendants.  Also, it appears that Defendants chose not to meet with Mr. Brames after his office offered to do so, therefore, it is a shallow statement to assert "he did not tell us" when the Defendants did not follow up with meeting with him.  Whether their trial counsel told them or met with them is not even pivotal to this Court's finding that the Defendants have wholly failed to demonstrate grounds for finding excusable neglect. The Defendants are responsible for failing to avail themselves of opportunities to learn of their legal remedies.  They, for whatever reason, chose to delay attempting to find counsel for so long that they missed the appeals deadline. They gave no valid reason for this delay other than the claim counsel allegedly "did not inform them of the deadline."  This is basically asserting that they were not informed of, and should not be charged with knowledge of, the 14-day appeal period provided in Bankruptcy Rule 8002(a).  As already stated above, the courts following the *Pioneer* decisions have emphasized that a misunderstanding or ignorance of the applicable rules by a  party or his counsel does not constitute excusable neglect.  *See, e.g., In re HML II, Inc.*, 234 B.R.  67, 72 (BAP 6th Cir. 1999); *Sabo v. Montgomery*, 2008 WL 344549 (S.D. Ind. 2008); *In re Pyramid Energy, Ltd.*, 165 B.R. 249, 251-52 (Bankr. S.D. Ill. 1994).  The case law makes clear, ignorance of the rules or the appeal deadline does not constitute excusable neglect.

This Court finds that the Defendants have failed to meet their burden of proof for their motion to prevail; they failed to demonstrate sufficient evidence of excusable neglect as required by Bankruptcy Rule 8002(c)(2) , and their motion shall be denied.

**Conclusion**

Based upon the foregoing, this Court hereby DENIES the Defendants' Motion for Leave to File Appeal Pursuant to Rule 8002(c) (2).

###